1

2

3

4

5

6

7

8     UNITED STATES DISTRICT COURT
      WESTERN DISTRICT OF WASHINGTON
9     AT TACOMA

10    KAMILLE FRANKLIN-DAVIS,

11                    Plaintiff,                    CASE NO. 12-cv-05986 JRC

12          v.                                      ORDER ON PLAINTIFFS
                                                    COMPLAINT
13    CAROLYN W. COLVIN, Acting
14    Commissioner of the Social Security
      Administration,[1]
15
                      Defendant.
16

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18    Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19    Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United

20    States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos.

21    13, 14, 15).

22    _____

23          [1] Carolyn W. Colvin became the Acting Commissioner of the Social Security
      Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil
24    Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

All of the treating and examining mental health care providers who offered an opinion concluded that plaintiff had marked or severe functional limitations due to her depressed mood, social withdrawal and ability to handle the normal stresses of a work environment. The ALJ rejected those opinions in favor of a non-treating, non-examining psychologist who reviewed the records and concluded that plaintiff had no such marked or severe limitations. The ALJ failed to provide clear and convincing reasons for rejecting some non-contradicted opinions of examining physicians and failed to provide specific and legitimate reasons for rejecting the conclusions of treating and examining mental health providers in favor of a reviewing examiner. For these reasons, the Court orders that this matter be reversed and remanded for further consideration.

BACKGROUND

Plaintiff, KAMILLE FRANKLIN-DAVIS, was born in 1976 and was 32 years old on the alleged date of disability onset of September 12, 2008 (*see* Tr. 165).

As one treatment provider summarized, plaintiff had "a horrible childhood" (Tr. 592). She was physically and sexually abused and was raped twice at the age of six and again at age sixteen (*id.*). Her mother had a history of alcohol and drug abuse, eventually resulting in her death because of a crack-induced stroke (*id.*). Plaintiff has had at least two psychiatric hospitalizations, including one instance when she hit herself in the head with a brick and another suicide attempt by cutting her hands (Tr. 441). Among other symptoms, she has had auditory hallucinations, Bipolar Disorder, "Currently Depressed" (in March, 2009), and a former history of alcohol abuse (Tr. 441-42). She has been married twice. She has three children by her first husband (Tr. 442). After dropping out

of school in the ninth grade, she returned and obtained her diploma, in addition to taking some post-high school courses (*id.*).

Plaintiff has work experience as a bill collector, as a school bus driver, as a customer service representative, as a night auditor, as a cashier, as an alarm monitor and as a janitor (Tr. 76).

Plaintiff has at least the severe impairments of "bi-polar disorder, PTSD, panic disorder without agoraphobia, and obesity (20 CFR 404.1520(c) and 416.920(c))" (Tr. 29).

At the time of the hearing, plaintiff was living with her husband and three children (Tr. 52).

PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act in February and March of 2009, respectively (*see* Tr. 27, 165-76). The applications were denied initially in June, 2009 and following reconsideration on January 4, 1010 (Tr. 89-92, 100-04). Plaintiff's requested hearing was held before Administrative Law Judge Stephanie Martz ("the ALJ") on February 3, 2011 (*see* Tr. 46-81). On March 11, 2011, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 24-45).

On September 18, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court

seeking judicial review of the ALJ's written decision in November, 2012 (*see* ECF No. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on February 27, 2013 (*see* ECF Nos. 10, 11).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ gave legally sufficient reasons for the weight given to the opinions of plaintiff's mental health providers; (2) Whether or not the ALJ gave legally sufficient reasons, supported by substantial evidence in the records, for finding plaintiff not fully credible; (3) Whether or not the ALJ properly evaluated the impact of plaintiff's obesity; (4) Whether or not the ALJ gave legally sufficient reasons for the weight afforded the reports of the lay witnesses; and (5) Whether or not the errors in the ALJ's decision are harmful and warrant remand for further proceedings or for payment of benefits (*see* ECF No. 13, pp. 1-2).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the

claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence." *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and

actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).

<u>DISCUSSION</u>

**(1)      Whether or not the ALJ gave legally sufficient reasons for the weight given to the opinions of plaintiff's mental health providers.**

Plaintiff argues that "[a]ll of the providers who treated or examined Plaintiff, as well as the lay reports, support greater mental limitations than the ALJ incorporated into the RFC" (ECF No. 14, p. 3). Indeed, plaintiff was treated or examined by a number of mental health professionals who consistently diagnosed plaintiff with bipolar disorder, depression, PTSD, panic disorder, without agoraphobia and a variety of other mental health issues (Tr. 284). This includes a diagnosis by Shah Nawaz, M.D. during a hospitalization from March 2nd through March 6th of 2009, following a suicide attempt when she overdosed on Valium and cut herself on the dorsum of her wrist (Tr. 284-86). She subsequently was given a psychiatric evaluation on March 27, 2009 from William

Egan, M.D. (Tr. 441-43). Dr. Egan assessed plaintiff with a GAF of 50 (Tr. 442) but noted that she had a GAF of 60 within the last year (Tr. 442). He concluded that plaintiff "has longstanding Bipolar Disorder, Predominantly Depressed, but she has had some full manic episodes, and has periods of psychosis with auditory hallucinations" (Tr. 442).

Plaintiff also was evaluated by Nichole Seymanski, Psy.D., in May of 2010 on behalf of the Department of Social and Health Services (Tr. 571-84). Dr. Seymanski did a detailed functional analysis and found that plaintiff had severe effects on her ability to conduct functional work activities as a result of her mental impairments and their resulting symptoms, including depressed mood, verbal expression of anxiety, suicidal trends and hallucinations and moderate disorders of social withdrawal (Tr. 573-74). She found that plaintiff had marked functional limitations in her ability to learn new tasks, exercise judgment and make decisions and also to perform routine tasks (Tr. 576). She also opined that plaintiff had marked functional limitations in her ability to relate appropriately with co-workers and supervisors, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and maintain appropriate behavior in a work setting (Tr. 576). Dr. Seymanski assessed plaintiff with a GAF of 35-40 (Tr. 580).

Plaintiff also was treated for mental health problems by Stuart A. Loyer, M.S. (Tr. 595-643) and Svetlana Konstantinovic, LCPC (Tr. 490-521). Mr. Loyer saw plaintiff on multiple occasions and assessed plaintiff as markedly limited in several key areas of functioning, including her ability to remember locations and work-like procedures, sustained concentration and persistence, ability to perform activities within a schedule,

maintain regular attendance, and be punctual within customary tolerances, the ability to complete a normal workday and workweek without interruption, ability to accept instructions and respond appropriately to criticism from supervisors, and ability to set realistic goals or make plans independently of others (Tr. 586-88). He concluded that these limitations had lasted or could be expected to last twelve continuous months (Tr. 588). Ms. Konstantinovic treated plaintiff on several occasions between May of 2009 and October of 2009 (Tr. 490-521) and assessed plaintiff with a GAF of 45 (Tr. 491, 512). She diagnosed plaintiff with bipolar disorder (Tr. 491, 494), and observed plaintiff's symptoms of anxiety, depression, and labile mood. (Tr. 490). In her discharge summary, Ms. Konstantinovic stated "Kamile was very inconsistent with her scheduled appointments. She had difficulty setting boundaries and remained very symptomatic" (*id.*). Overall, not all of the limitations assessed by plaintiff's providers are spelled out here, yet the picture from these providers is of a woman who had ongoing marked and/or significant impairments in her ability to function in a work environment.

The ALJ gave little or no weight to all of these mental health care providers and, instead, accepted the opinion of state reviewing psychologist Darrell Snyder, Ph.D. (Tr. 36). Dr. Snyder never saw plaintiff. He reviewed the existing records from other providers and, based on those reports, prepared a mental residual functional capacity form in which he disagreed with plaintiff's mental health care providers and concluded that although plaintiff suffered from severe, recurrent bipolar disorder, depressed, with psychosis, (Tr. 399), in his opinion, plaintiff had the functional "capacity to understand, remember, carry out and sustain performance of simple routine tasks of 1-2 steps in a

predicable work-like setting" so long as it "does not require more than brief superficial encounters with others and does not provide greater than average amounts of stress or pressure" (Tr. 426).

While an ALJ may accept the conclusions of a non-treating, non-examining consultant over the conclusions of treating and examining mental health professions, the ALJ must comply with a rigorous standard if choosing to do so.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); *see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). When the decision is unfavorable, it must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion and the reasons for that weight." SSR 96-2p, 1996 SSR LEXIS 9 at *11-*12.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the

record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In this case, there were some instances where the state consultant, Dr. Snyder directly contradicted some conclusions by treating and examining mental health care professionals, such as particular functional limitations suffered by plaintiff. There were also some instances where Dr. Snyder provided no opinion and yet, the ALJ discounted the opinions of treating and examining mental health care providers. An example of this latter instance is the ALJ's evaluation of plaintiff's varying GAF scores. Dr. Egan assessed plaintiff with a GAF of 50 (Tr. 442). Dr. Seymanski assessed plaintiff with a GAF of 35-40 (Tr. 580). Mr. Loyer, M.S. assessed plaintiff with a GAF of less than 60 (Tr. 593; *see also* Tr. 586-88). Ms. Konstantinovic on at least two occasions assessed plaintiff with a GAF of 45 (Tr. 491, 512). State consultant Snyder offered no opinion on this subject (Tr. 392-427). Yet the ALJ rejected the conclusions of plaintiff's mental health care providers on plaintiff's GAF, which is a functional assessment, based on her own analysis of the evidence. For instance, she concluded that Dr. Egan's assessment in March of 2009 of GAF 50 was "inconsistent with the evidence discussed above including the mild clinical findings and evidence showing greater mental functioning ability" (Tr. 36). This, along with a discussion of only plaintiff's positive findings, lacks the detail and specificity

necessary to provide "clear and convincing" reasons for rejecting the uncontradicted

opinion of an examining mental health care professional. It is difficult to find substantial

evidence in the record for the ALJ's conclusion that all of the examining and treating

medical opinions were inconsistent with the medical evidence as a whole, when these

sources together comprise the majority of the medical opinion evidence in the record. The

ALJ found that Dr. Egan's opinion was "inconsistent with the evidence discussed above"

(Tr. 36); found "Dr. Seymanski's assessment inconsistent with the evidence" (Tr. 37); found

the opinion of S. Konstantinovic, LCPC to be "inconsistent with the evidence discussed

above" (Tr. 37); and accorded little weight to "Mr. Loyer's assessments because they are

inconsistent with the evidence of mild clinical findings and evidence showing greater

functioning ability as discussed above" (Tr. 38). Therefore, it appears that the ALJ

provided her own interpretation of the medical evidence, and found all of the examining

and treating sources' opinions to be in conflict with her assessment (see Tr. 36-37).

Interestingly, the only medical opinion consistent with the ALJ's interpretation of the

medical evidence is from a psychologist who never examined or evaluated plaintiff, and

who did not review much of the medical evidence which was gathered subsequent to his

May 29, 2009 opinion (*see* Tr. 394).

Additionally, the ALJ concluded that Dr. Seymanski's GAF assessment of 35-40

was entitled to little weight because plaintiff allegedly misrepresented how often she

attended therapy (Tr. 37), although it is unclear what relevance, if any, plaintiff's

representations regarding her attendance at therapy had to do with the doctor's specific

assessment of plaintiff's global functioning.

When a mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a *willful* failure to comply with prescribed treatment can be illogical. This is in part because a person suffering from a mental illness may not realize that she needs her medication, or she may not even realize that his "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* (*quoting* with approval, *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

When a person suffers from a mental illness, and the mentally ill person does not have the requisite insight into her condition to seek or comply with treatment, or does not have the memory and focus to have the ability to take a medication three times a day, this fact actually can indicate a greater severity of mental incapacity. *See Van Nguyen, supra*, 100 F.3d at 1465; *see also Blankenship, supra*, 874 F.2d at 1124.

In addition, according to Social Security Ruling, (hereinafter "SSR"), SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7, 1996 SSR LEXIS 4, at *22;  *see also Regennitter v. Comm'r SSA*, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's

complaint for lack of treatment when the record establishes that the claimant could not afford it') (citations, ellipses and brackets omitted).

Also, the ALJ rejected Dr. Seymanski's GAF assessment of 35-40 because the medical records revealed that claimant exhibited normal motor functioning, orientation to all spheres, normal thought processes, normal attention, normal memory, cooperative attitude, normal thought content, fair judgment, and no suicidal thoughts (Tr. 37 (*citing* Tr. 432)), but during the same mental status examination, Dr. Seymanski also noted labile and dysphoric mood, slow speech, flat affect, and auditory hallucinations (Tr. 432). The ALJ seems to have chosen to emphasize only the favorable portions of Dr. Seymanski's mental status examination and rejected or ignored the unfavorable, similar to her interpretation of the opinion from Dr. Egan. The ALJ also appears to provide her own interpretation of psychological examination results, instead of relying on the expertise of the doctors.

The ALJ must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Here, the ALJ did not provide clear and convincing reasons for rejecting the uncontradicted GAF scores of treating and examining mental health care professionals.

State consultant Snyder did not attempt to evaluate plaintiff's GAF scores and the ALJ was in no position to do so herself. While a GAF score, alone, cannot serve as the basis for a finding of disability, it is important. A GAF of 50, for instance, is indicative of symptoms such as suicidal ideation, or serious impairments in social or occupational

functioning [http:\\www.omh.ny.gov\omhweb\childservice\mrt\global_assessment_functioning.pdf, p. 3 (last visited January 5, 2013)]. Certainly, GAF scores of 50 or under are inconsistent with the ALJ's conclusion regarding plaintiff's RFC. Therefore, failing to provide "clear and convincing" reasons for rejecting treating and examining physicians' opinions on that subject constitutes harmful error given the record in this matter.

In fact, attempting to evaluate plaintiff's GAF score herself cannot even rise to the level of a germane reason for rejecting the opinion of "other medical sources" such as Stuart Loyer, M.S. and Svetlana Kostantinovic, LCPC.

In this case, Mr. Loyer, M.S. and Ms. Kostantinovic, LCPC provided mental health treatment for plaintiff on multiple occasions (*see* Tr. 595-643, 490-520). With regard to the GAF conclusions of Mr. Loyer and Ms. Konstantinovic, the ALJ provided little or no explanation for rejecting these conclusions other than that they were "inconsistent with the evidence discussed above" (Tr. 37). As noted above, the explanations provided are the ALJ's own interpretation of the data, which as discussed above, would not be an appropriate treatment of GAF scores. Also, the ALJ rejected Mr. Loyer's and Ms. Kostantinovic's opinions because of observations they made regarding plaintiff's ability to perform certain activities that had no bearing on her ability to maintain competitive employment. For instance, the ALJ noted that Ms. Kostantinovic had checked a box that indicated "not applicable" to issues related to activities of daily living ("ADLs") and home management (Tr. 37 (*citing* Tr. 504)) and that plaintiff had good personal hygiene (Tr. 37 (*citing* Tr. 498)). These do not constitute germane reasons for

rejecting Ms. Kostantinovic's opinions as they bear only some relation on her ability to perform work related tasks and do not appear to have any bearing on the specific functional opinions by Ms. Kostantinovic. Similarly, the ALJ gave little weight to Ms. Kostantinovic's opinions because they were inconsistent with tests administered by Dr. Seymanski (Tr. 38 (*citing* Tr. 576)). In contrast, the ALJ rejected many of the Dr. Seymanski's conclusions, which consistently noted that plaintiff had severe limitations and impairments that would have prevented her from working (Tr. 38, 490, 580). Again, the ALJ has not provided a germane reason for rejecting these opinions.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as nurse practitioners, therapists and chiropractors, who are considered other medical sources[2], *see* 20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100

---

[2] "Other sources" specifically delineated in the relevant federal regulations also include "educational personnel," *see* 20 C.F.R. § 404.1513(d)(2), and public and private "social welfare agency personnel," *see* 20 C.F.R. § 404.1513(d)(3).

F.3d 1462, 1467 (9th Cir. 1996). Evidence from "other medical" sources, that is, lay evidence, can demonstrate "the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* at *4. The Social Security Administration has recognized that with "the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." *Id.* at *8. Therefore, according to the Social Security Administration, opinions from other medical sources, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects." *Id.*

Relevant factors when determining the weight to be given to another medical source include:

> How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source present relevant evidence to support an opinion; How well the source explains the opinion; Whether [or not] the source has a specialty or area of expertise related to the individuals' impairments(s), and Any other factors that tend to support or refute the opinion.
> 2006 SSR LEXIS 5 at *11.

It is significant that in this case, both Mr. Loyer and Ms. Kostantinovic saw plaintiff on multiple occasions. Their opinions were consistent with other acceptable medical sources. Furthermore, their areas of expertise were in treating mental health

patients. The ALJ failed to consider or comment on these factors when rejecting their opinions.

As noted by plaintiff, plaintiff's providers consistently found that plaintiff's bipolar disorder caused significant limitations that impacted plaintiff's ability to maintain competitive employment and the reasons provided by the ALJ to reject those opinions in favor of a non-examining state consultant are not supported by substantial evidence in the record.

Because the ALJ failed to provide legally sufficient reasons for rejecting the opinion testimony from treating and examining physicians and other mental health care professionals and because these opinions directly affected the ALJ's conclusions regarding plaintiff's RFC, this error was not harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

For the forgoing reasons, this matter must be reversed and remanded for further proceedings.

Because the ALJ's opinions regarding the medical evidence pervade all aspects of this decision, it is unnecessary to address the other issues raised in plaintiff's appeal, as the entire case should be reevaluated in light of the above standards. *See, e.g.*, 20 C.F.R. § 404.1529(c) (a determination of a claimant's credibility relies in part on the assessment of the medical evidence).

//

//

//

1

<u>CONCLUSION</u>

2      Based on these reasons and the relevant record, the Court **ORDERS** that this

3 matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

4 405(g) to the Commissioner for further consideration.

5      **JUDGMENT** should be for plaintiff and the case should be closed.

6 Dated this 9th day of January, 2014.

7

8

9                                 J. Richard Creatura
                                United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24